UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 19-1585-DMG (FFMx)** | Date | April 2, 2019 |
|---|---|---|---|

| Title | *Katherine Weaver v. City of Montebello* | Page | 1 of 9 |
|---|---|---|---|

| Present: The Honorable | DOLLY M. GEE, UNITED STATES DISTRICT JUDGE |
|---|---|

| KANE TIEN | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
|---|---|
| None Present | None Present |

**Proceedings: IN CHAMBERS - ORDER RE PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION [7]**

## I.
## PROCEDURAL BACKGROUND

This matter is before the Court on Plaintiff Katherine Weaver's Motion for Preliminary Injunction. [Doc. # 7.] Plaintiff requests that the Court enjoin Defendant City of Montebello from enforcing certain zoning ordinances that "require tattoo business[es] to apply for a conditional use permit and exclude[] them . . . from almost all commercial locations in the City." [Doc. # 7-1 ("TRO Application") at 1.] Plaintiff filed an *Ex Parte* Application for Temporary Restraining Order ("TRO") and Order to Show Cause ("OSC") re Preliminary Injunction on March 14, 2019. [Doc. # 7.] Defendant did not oppose it. The Court granted Plaintiff's Application and issued an OSC re Plaintiff's Motion for Preliminary Injunction ("MPI") on March 19, 2019. [Doc. # 13 ("TRO Order").] The TRO Order required Defendant to file any opposition it had to the MPI by March 25, 2019. Once again, Defendant filed no written response. On April 2, 2019, the Court held a hearing on the OSC, at which Defendant appeared.

## II.
## FACTUAL BACKGROUND

Plaintiff seeks to open a tattoo studio. [Doc. # 7-3 ("Weaver Decl.") at ¶ 2.] She has a business model in mind and has located an "appropriate site" to open up shop on Beverly Boulevard in Montebello, California. *Id.* at ¶ 3. Montebello has zoned her chosen area for general commercial use (in a zone designated as C-2). *Id.* The city, however, prohibits "body art establishments," including tattoo studios from operating within 1,000 feet of certain "sensitive uses," such as residences, schools, "places of religious assembly," libraries, public parks, or any city-owned facility. TRO Application at 5; Montebello Mun. Code § 17.08.835. The effect of the 1,000-foot rule, as city officials demonstrated to Plaintiff, is that Montebello's zoning code only permits tattoo shops to operate in two small "shopping centers" in the northeast

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 19-1585-DMG (FFMx)** | Date | April 2, 2019 |
|---|---|---|---|
| Title | *Katherine Weaver v. City of Montebello* | Page | 2 of 9 |

corner of the city. Weaver Decl. at ¶ 5. According to Plaintiff, shopping centers are not ideal locations for tattoo studios because they generally do not "welcome" tattoo businesses, which do not attract much foot-traffic and cannot afford the high rents. *Id.* at ¶ 6.

Even if Plaintiff decided to open her studio in one of the two shopping centers, she would first have to obtain a conditional use permit ("CUP"). TRO Application at 5. Montebello's Municipal Code requires that "[w]hen an application has been filed for a . . . conditional use permit or any other action requiring a public hearing . . . [t]he date for the public hearing shall be set by the city planner and shall be held as soon as possible following receipt of the complete application." Montebello Mun. Code § 17.78.020. The Code requires that:

> Before any conditional use permit shall be granted, all of the following findings must be made:
>
> A. That the site for the proposed use is adequate in size and shape;
> B. That the site has sufficient access to streets and highways, and is adequate in width and pavement type to carry the quantity and quality of traffic generated by the proposed use;
> C. That the proposed use will not have an adverse effect upon adjacent or abutting properties; and
> D. That the proposed use is consistent with the objectives of the community redevelopment project area in which the site is located.

*Id.* § 17.70.070. The planning commission must, within "twenty days after completion of the public hearing" on the CUP "announce its findings in a formal resolution." *Id.* at § 17.70.110(A). The commission must state "the facts and reasons which . . . make the granting of the conditional use permit necessary to carry out the general purpose of this code." *Id.* at § 17.70.110(B).[1] The resolution must also "set forth those conditions necessary to [e]nsure that granting the conditional use permit will not adversely affect the surrounding properties nor the general welfare of the community." *Id.*

Operating a tattoo studio in violation of the Code is a misdemeanor, punishable by six months in jail and a $1,000 fine. Weaver Decl. at ¶ 9. Plaintiff claims Montebello's zoning scheme "effectively excludes tattoo businesses from the entire city." *Id.* at ¶ 7. As a result, she argues that Montebello's CUP regime amounts to an unconstitutional prior restraint on First

---

[1] The Court notes that the Code ostensibly requires the planning commission to supply "facts and reasons" only when it *grants* a CUP, not when it *denies* one. *See* Montebello Mun. Code § 17.70.110(B).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 19-1585-DMG (FFMx)** | Date | April 2, 2019 |
|---|---|---|---|
| Title | *Katherine Weaver v. City of Montebello* | | Page  3 of 9 |

Amendment-protected speech, both facially and as applied to her, because: (1) it vests city officials with "unbridled discretion" to restrict speech; and (2) it does not include sufficient procedural safeguards to prevent abuses of the CUP regime. TRO Application at 6-9. She also argues that Montebello's general zoning restrictions violate the First Amendment.

## III.
## LEGAL STANDARD

Federal Rule of Civil Procedure 65 governs the issuance of TROs and preliminary injunctions, and courts apply the same standard to both. *See Credit Bureau Connection, Inc. v. Pardini*, 726 F. Supp. 2d 1107, 1114 (E.D. Cal. 2010) (citing *Ne. Ohio Coal. for the Homeless v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006)). Plaintiffs seeking injunctive relief must show that: (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) an injunction is in the public interest. *Toyo Tire Holdings of Ams. Inc. v. Cont'l Tire N. Am., Inc.*, 609 F.3d 975, 982 (9th Cir. 2010) (citing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008)). An injunction is also appropriate when a plaintiff raises "serious questions going to the merits," demonstrates that "the balance of hardships tips sharply in the plaintiff's favor," and "shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (quoting *The Lands Council v. McNair*, 537 F.3d 981, 987 (9th Cir. 2008)).

## IV.
## DISCUSSION

**A.  Likelihood of Success on the Merits**

As a preliminary matter, operating a tattoo studio is protected First Amendment activity. *Anderson v. City of Hermosa Beach*, 621 F.3d 1051, 1060 (9th Cir. 2010) ("The tattoo *itself*, the *process* of tattooing, and even the *business* of tattooing are not expressive conduct but purely expressive activity fully protected by the First Amendment."). Accordingly, Plaintiff has standing to pursue facial and as-applied challenges to Montebello's zoning requirements. *Real v. City of Long Beach*, 852 F.3d 929, 933 (9th Cir. 2017) (concluding plaintiff, a tattoo shop owner, could bring a facial First Amendment challenge to a CUP scheme "when he argue[d] that an ordinance . . . impermissibly restricts a protected activity.") (internal quotes and brackets omitted); *Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1033–34 (9th Cir. 2006).

1. **Montebello's CUP Requirement Likely Vests Officials with Unbridled Discretion**

Prior restraints on First Amendment speech are not "*per se* unconstitutional," but "any system of prior restraint comes to [the court] bearing a heavy presumption against its constitutional validity." *Epona v. Cty. of Ventura*, 876 F.3d 1214, 1222 (9th Cir. 2017) (citing *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 225 (1990)). Any ordinance that "makes the peaceful enjoyment of freedoms which the Constitution guarantees contingent upon the uncontrolled will of an official—as by requiring a permit or license which may be granted or withheld in the discretion of such official—is an unconstitutional censorship or prior restraint." *Id.* (quoting *Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 151 (1969)). Zoning requirements, such as the ones at issue here, qualify as "ordinances" under *Shuttlesworth*. *Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 68 (1981) ("But the zoning power is not infinite and unchallengeable; it 'must be exercised within constitutional limits.'").

To avoid giving officials an unconstitutional amount of discretion, a "law subjecting the exercise of First Amendment freedoms to the prior restraint of a license" must set forth "narrow, objective, and definite standards to guide the licensing authority." *Epona*, 876 F.3d at 1222. In other words, laws without such definite guidelines pose a "threat of content-based, discriminatory enforcement." *G.K. Ltd. Travel v. City of Lake Oswego*, 436 F.3d 1064, 1082 (9th Cir. 2006). In *Epona*, the Ninth Circuit fixed guideposts for district courts evaluating a prior restraint's constitutionality. On one end of the spectrum, the Ninth Circuit has held unconstitutional a law that: (1) included only "abstract language," such as requirements that structures may not "have a harmful effect upon the health or welfare of the general public" or be "detrimental to the welfare of the general public . . . [or] to the aesthetic quality of the community or the surrounding land uses"; and (2) lacked "any requirement that officials provide some evidence to support the conclusion that a particular structure or sign is detrimental to the community." *Id.* at 1223.

On the other end, the Ninth Circuit has approved of a city's "sign code" that: (1) used abstract terms, but provided specific definitions for those terms elsewhere in the code; and (2) "provided additional safeguards by requiring that officials render application decisions within a limited time period and state the reasons for [each] decision to either grant or deny a permit so as to facilitate effective review." *Id.* at 1223 (internal citations omitted). It then recognized that some cases may fall between these two data points and emphasized that "neither the provision of specific guidelines nor a requirement of specific factual findings is necessarily determinative of whether a statute confers excess discretion." *Id.* at 1225. Accordingly, instead of wrestling to fit novel circumstances within bright line rules, courts should look to the totality of the factors to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 19-1585-DMG (FFMx)** | Date | April 2, 2019 |
|---|---|---|---|
| Title | *Katherine Weaver v. City of Montebello* | Page | 5 of 9 |

assess whether an ordinance "contains adequate safeguards to protect against official abuse." *Id.* (internal citations omitted).

Here, section 17.70.070's requirements that "proposed use[s] will not have an adverse effect upon adjacent or abutting properties" and that the "proposed use is consistent with the objectives of the community redevelopment project area" are almost identical to the "abstract language" of which *Epona* disapproved. The Court's review of the Code has revealed no obvious definitions for those vague terms. The Code does require that the planning commission provide "facts and reasons" underlying its decisions on CUP applications, but that requirement—at least on its face—only applies to decisions *granting* CUPs, and not to decisions *denying* them. If the "facts and reasons" requirement does not apply to CUP denials, Montebello's CUP regime employs abstract language and provides no meaningful factual-finding requirement. Given these circumstances, Plaintiff will likely succeed on the merits of her claim.

If the "facts and reasons" requirement applies to denials as well, the requirement may still be unconstitutional. The Ninth Circuit has indicated that Court should take into account the level of specificity that the ordinance requires with respect to factual findings. *See Epona*, 876 F.3d at 1224-25, 1224 n.8 (disapproving of unspecific factual findings in a CUP application denial). Section 17.70.110 of the Code contains no specificity requirement, making it at least possible that officials could deny an application for reasons no less vague than those *Epona* condemned. Therefore, even if the "facts and reasons" requirement applies to CUP denials, Plaintiff has at least raised a serious material question going to the merits of her claim—whether the planning commission is required to provide specific enough factual findings to cabin the city's discretion in restricting speech.

### 2. Montebello's CUP Regime's Procedural Safeguards are Insufficient

In general, "the following three procedural safeguards [are] necessary to ensure expeditious decisionmaking" in the prior restraint context: "(1) any restraint prior to judicial review can be imposed only for a specified brief period during which the status quo must be maintained; (2) expeditious judicial review of that decision must be available; and (3) the censor must bear the burden of going to court to suppress the speech and must bear the burden of proof once in court." *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 227 (1990) (plurality opinion) (quoting *Freedman v. Maryland*, 380 U.S. 51, 58-60 (1965)). The first two of these "safeguards are essential" in the CUP context, but the third does not apply. *Id.* at 228. A law that fails to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 19-1585-DMG (FFMx)** | Date | April 2, 2019 |
|---|---|---|---|
| Title | *Katherine Weaver v. City of Montebello* | Page | 6 of 9 |

"confine the time within which the licensor must make a decision contains the same vice as a statute delegating excessive administrative discretion." *Id.* at 226–27.[2]

Plaintiff argues baldly that "[t]here appears to be no deadline for granting or denying the conditional use permit." TRO Application at 9. While this may ultimately be correct, Plaintiff's matter-of-fact assertion is an oversimplification. Section 17.70.110 requires that the planning commission announce its decision granting or denying an application for a CUP "[w]ithin twenty days after the completion of the public hearing" on the application. Montebello Mun. Code § 17.70.110(A). There does not appear, however, to be a time period within which the city planner must hold a public hearing. The Code does not require Montebello to schedule a public hearing until an individual has filed her CUP application. *Id.* at § 17.78.020. At that point, the Code states only that the "date for the public hearing shall be set by the city planner and shall be held as soon as possible." *Id.* Because, of course, "as soon as possible" is not a "specified brief period," one possible effect of Montebello's regime is that city officials reluctant to grant a certain CUP application could simply delay scheduling a public hearing to avoid starting the clock on the 20-day decision requirement.

The Ninth Circuit has previously found unconstitutional similar ambiguities with respect to events that trigger specific review periods. In *Baby Tam & Co. v. City of Las Vegas,* the court found that an ordinance requiring the city to act on a CUP application within 30 days was unconstitutional when the municipal code set no time limit within which the events triggering the 30-day window must occur. 199 F.3d 1111, 1114-15 (9th Cir. 2000). Accordingly, Plaintiff has shown a substantial likelihood that Montebello's similar CUP regime runs afoul of *Freedman*'s requirement that governments put in place safeguards against unconstitutional delays in individuals' ability to take part in First-Amendment protected business.[3]

---

[2] These "safeguards are not required for content-neutral time, place, and manner permit schemes," but "a permitting scheme is not 'content neutral' if it vests unbridled discretion in a permitting official." *Epona*, 876 F.3d at 1225. If a CUP scheme "lacks adequate standards for official decision making," it "necessarily also requires the time limitation contemplated by *Freedman*." Since the Court has determined that, at the very least, Plaintiff has raised serious issues going to the merits of whether Montebello's officials have unbridled decision-making authority, *Freedman*'s procedural safeguards also warrant analysis.

[3] The Court need not address the second safeguard *Freedman* requires because its decision that interim injunctive relief is appropriate based on the absence of the first safeguard is sufficient at this stage. To the extent the second safeguard is relevant to this case, the parties may address it as needed at a later time.

### 3. Montebello Has Not Sufficiently Justified its Restrictions on Tattoo Studios

Since, as discussed above, the business of tattooing is fully-protected activity, Montebello bears the burden of showing that its restriction on where tattoo studios can operate withstands intermediate scrutiny. In the First Amendment context, courts determine the constitutionality of a "time, place or manner" restriction on speech by considering whether the restriction: "(1) is 'justified without reference to the content of the regulated speech'; (2) is 'narrowly tailored to serve a significant governmental interest'; and (3) 'leave[s] open ample alternative channels for communication of the information.'" *Anderson*, 621 F.3d at 1064 (9th Cir. 2010) (quoting *Clark v. Cmty. for Creative Non–Violence*, 468 U.S. 288, 293 (1984)). Plaintiff argues that Montebello has not sufficiently demonstrated a significant government interest that justifies prohibiting tattoo studios from operating within 1,000 feet of other "body art establishments" or "sensitive uses." TRO Application at 10. She references two documents in which Defendant described its reasoning. The first is Montebello's ordinance repealing its total ban on tattoo shops and replacing it with the present restrictions. That ordinance states that:

> WHEREAS, the City Council finds and determines that this Ordinance *furthers the public health, safety, and general welfare of the community*, and the public interest, convenience, and necessity, by identifying permissible zoning districts for the establishment and operation of body art establishments, a constitutionally protected land use, and enacting reasonable time, place, and manner regulations governing such use to ensure the consistency of land uses throughout the City; and
>
> WHEREAS, the City Council further finds and declares that this Ordinance *is necessary and appropriate to ensure body art establishments are operated in a manner that is compatible with and not detrimental to other land uses in the vicinity*, and further that this Ordinance is consistent with purposes and goals of the Montebello General Plan, including but not limited to making allowance for a variety of commercial land uses that serve the needs and desires of the community

[Doc. # 12 ("Moest Decl."), Ex. 2.] Additionally, the "staff report recommending adoption of the ordinance" also states that:

> [T]he majority of surrounding communities allow body art establishments to operate in one or more commercial zones, as well as manufacturing/industrial zones, either by right or with a conditional use

> permit. Most communities place restrictions on the proximity of body art establishments to one-another, as well to sensitive land uses (e.g. residential, school, park, city buildings, etc.).

TRO Application at 11-12; Moest Decl., Ex. 3.

The Court agrees that these explanations do not demonstrate a government interest in substantially limiting tattoo studios' potential locations. Nor do they show that the ordinance is narrowly tailored to advance those interests. *Buehrle v. City of Key West*, 813 F.3d 973, 978–79 (11th Cir. 2015) ("We do not simply take the City at its word that the ordinance serves the aforementioned interests. Instead, the City must demonstrate that it had a reasonable basis for believing that its regulation would further these legitimate interests."). The fact that other cities also restrict tattoo studios' location is not a government interest in enacting a zoning scheme so much as it is a statement that many cities employ the same practice. The quoted passages do not explain why a tattoo studio's presence outside the two shopping centers to which they have been relegated would harm the "public health, safety, or welfare of the community" or why a tattoo studio, operated responsibly, would be incompatible or detrimental to other neighboring land uses. Nor do they explain why the chosen restrictions go no further than necessary to remedy these concerns.

The Court acknowledges, however, that because Defendant did not respond to Plaintiff's TRO Application or the OSC, it has not had the opportunity to provide other possible justifications for the restriction. Nonetheless, at this early stage, the Court determines that Plaintiff has done enough to raise serious questions going to the merits of whether Montebello's zoning ordinance is narrowly tailored to advance a significant government interest.

Accordingly, Plaintiff has satisfied the first *Winter* factor with respect to her First Amendment claims.

**B.**   **Likelihood of Irreparable Injury, the Balance of Hardships, and the Public Interest**

It is well-established that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Therefore, the above analysis is sufficient to conclude that Plaintiff has satisfied the second *Winter* factor as well. Courts have previously held that the balance of hardships favors First Amendment expression even when granting preliminary injunctive relief in favor of a plaintiff asserting his right to that expression would prevent a city from being able to enforce an ordinance. *Napa Valley Publ'g Co. v. City of Calistoga*, 225 F. Supp. 2d 1176, 1197 (N.D. Cal.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 19-1585-DMG (FFMx) | Date | April 2, 2019 |
|---|---|---|---|
| Title | *Katherine Weaver v. City of Montebello* | | Page 9 of 9 |

2002). Given that Defendant failed to respond to the TRO Application and OSC and enumerate further hardships it might endure, the Court sees no reason to reach a different conclusion. "Courts have consistently recognized the public interest in safeguarding First Amendment rights." *Id.* at 1197-98 (citing cases).

### C. The Court Waives the Bond Requirement

Rule 65(c) permits a court to grant preliminary injunctive relief "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Notwithstanding its seemingly mandatory language, "Rule 65(c) invests the district court with discretion as to the amount of security required, if any." *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (internal quotation marks omitted). Based on the record before it, the Court waives the bond requirement.

## V.
## CONCLUSION

In light of the foregoing, Plaintiffs' Motion for Preliminary Injunction is **GRANTED**.

IT IS HEREBY ORDERED THAT, pending the entry of final judgment in this action, the City of Montebello, its agents, servants, employees, attorneys, and all those in active concert or participation with the City of Montebello are restrained and enjoined from enforcing the above-referenced zoning ordinances to preclude Plaintiff from opening and operating a tattoo studio in the proposed location.[4]

Plaintiff shall serve Defendant with this Order no later than April 4, 2019 and file a proof of service.

**IT IS SO ORDERED.**

---

[4] At the hearing on this Motion, Montebello requested additional clarification as to the preliminary injunction's scope. This Order relates only to Montebello's CUP regime and its prohibition on "body art establishments" opening and operating within 1,000 feet of "sensitive uses."